# Darling v. Cheltenham & Abington Sewerage Company

*H. Eugene Gardner,* for plaintiff.
*High, Dettra & Swartz,* for defendant.

DANNEHOWER, J., December 28, 1934. — This case comes before the court on an affidavit of defense in the nature of a statutory demurrer. The action is in assumpsit for the recovery of $20 and interest thereon, paid at the rate of $5 per year for 4 years from July 1, 1929, to July 1, 1933, by the plaintiff patron to the defendant sewerage corporation, a public service company, for the use of storm-water drains connected with plaintiff's property at 237 Roberts Avenue, Glenside, Montgomery County, Pa.

It is contended by the plaintiff that defendant did not own the storm-water sewers and was without authority at law to charge for their use. The statutory demurrer avers that as this same case for reparation was dismissed by the Public Service Commission, an appeal should be taken to the Superior Court, and that this court is without jurisdiction to entertain this action.

A brief history of this controversy is necessary for intelligent discussion. A few years ago the defendant, a public service corporation, filed with the Public Service Commission new tariffs, increasing the rates for sanitary sewage service and private storm-water drainage service, and creating new charges to municipalities for surface drainage. Complaints were filed by various individuals and the Townships of Cheltenham and Abington. The commission, with reference to the storm-water system, decided that the defendant company "had failed to

show ownership or possession of the storm-water drains so as to justify charges for their use," and ordered new tariffs filed in which there should be no charge for services performed by the storm-water system. The order of the commission was affirmed upon appeals to both the Superior and Supreme Courts. These courts held "That the evidence was not sufficient to indicate either a proprietary interest sufficient to sustain a prima facie claim of title or even possession, or to show such performance of service as would justify compensation to a public service company". And, therefore, defendant was without authority at law to charge for the use of the storm-water sewers, and such charges imposed were illegal, null and void: Cheltenham and Abington Sewerage Co. v. Public Service Comm., 311 Pa. 175, affirming 107 Pa. Superior Ct. 225.

Following these decisions, the present plaintiff and other property owners who had paid storm-water drainage service charges filed a complaint for an order of reparation for the amounts paid. The commission, in the report and order of June 26, 1934, complaint docket no. 10123, dismissed the complaint, deciding that: "The commission does not possess the authority or jurisdiction to make an award of damages or reparation, because the defendant company has not been rendering a public service within the meaning of the public service company law." Thereupon the plaintiff, without appealing to the Superior Court from this order of the commission, brought the present action. The sole question involved is whether this court has jurisdiction.

The Public Service Commission is a creature of statute and does not have any greater power or authority than that conferred upon it and plainly marked by the acts of assembly defining its jurisdiction and duties, and to these the courts must confine it. "Where authority is conferred on an extra-judicial body, 'not in the course of the common law,' the legislative grant of power to act in any particular case must be clear": Swarthmore Borough v.

Public Service Comm. et al., 277 Pa. 472, 479. "The Public Service Company Law . . . covers only such matters as are expressly or by necessary implication included within its terms": Citizens Passenger Railway Co. v. Public Service Comm. et al., 271 Pa. 39, 54.

The authority of the Public Service Commission to order reparation is found in The Public Service Company Law of July 26, 1913, P. L. 1374, art. v, sec. 5, 66 PS §511, which provides as follows:

"If, after hearing, upon complaint . . . the commission shall determine that any rates which have been collected, or any acts which have been done or omitted to be done, or any regulations, classifications, or practices which have been enforced for, or in relation to, any service rendered after this act becomes effective, by any public service company complained of, were in violation of any order of the commission, or were unjust and unreasonable or unjustly discriminatory, or unduly or unreasonably preferential . . . the commission shall, upon petition, have the power and authority to make an order for reparation, awarding and directing the payment to any such complainant, petitioner . . . of the amount of damages sustained in consequence of said unjust, unreasonable, or unlawful collections, acts or commissions, regulations, classifications or practices, of such public service company. . . .

"The commission shall state in said order the exact amount to be paid, as well as its findings upon pertinent questions of fact.

"If the public service company does not comply with the aforesaid order for the payment of money within the time fixed therein, the person named therein, to whom such payment is directed to be made, may sue therefor in any court of common pleas of this Commonwealth; and said order made by the commission shall be prima facie evidence of the facts therein stated. . . .

"No action shall be brought in any court on account of the wrongs or injuries referred to in this section, unless

and until the commission shall have determined that the rate, regulation, classification, practice, act, or omission in question was unjust, unreasonable, or unjustly discriminatory or unduly or unreasonably preferential . . . and, then, only to recover such damages as may have been awarded and directed to be paid by the commission in said order."

The power and authority of the commission to regulate public service companies is based upon the fact that the company is performing a public service. In the present case, the Superior and Supreme Courts and the commission have decided that the defendant company has not been rendering a public service and was without authority at law to charge for the use of the storm-water system. In the matter of reparation, the commission has jurisdiction in those cases where the reparations have relation to the performance of a public service and not in private matters between the utility and an individual. The power of the commission, therefore, does not extend to acts of a utility not affecting its public duties. Its jurisdiction is limited by the legislature to matters wherein the rights of a public service company and the public are involved and it has no power to adjudicate purely private matters between a utility and an individual.

We are therefore of the opinion that the commission does not have jurisdiction under The Public Service Company Law to entertain complaints for orders of reparation, where the utility has not been rendering a public service and was without authority at law to charge. That being our conclusion, there is no legal requirement to appeal to the Superior Court from the commission's order refusing a reparation award. We are familiar with the decision in the case of Centre County Lime Co. et al. v. Public Service Comm., 96 Pa. Superior Ct. 590, which decides that the Superior Court has jurisdiction of an appeal from the commission's order refusing reparation. But that case differs from the present case in that the commission had jurisdiction and the utility was perform-

ing a public service. While the amount involved in this case is relatively small, nevertheless, we understand that this is a test case, and many others have similar claims. We have therefore given it careful consideration.

And now, December 28, 1934, for the foregoing reasons, the question of law raised by defendant in its affidavit of defense is decided in favor of the plaintiff, the statutory demurrer is overruled, and defendant is given 15 days in which to file an affidavit of defense to the merits.